603 A.2d 675

**MOTION CONTROL INDUSTRIES, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (BUCK), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Feb. 5, 1992.

400

Terry L.M. Bashline, for petitioner.

Thomas G. Wagner, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Motion Control Industries (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) which reversed the Referee's decision and awarded fatal claim benefits to Tina M. Buck (Claimant) for the work-related death of her husband, Paul M. Buck (decedent).

Decedent had been employed by Motion Control Industries as a foreman and regularly worked the 3:00 p.m. to 11:00 p.m. shift. On August 20, 1987, the date of his death, decedent had completed his regular shift, had punched out on the time clock, and had started walking to his car which was parked in the Employer's parking lot. Shortly after 11:00 p.m., the Employer's security guard found decedent lying on the Employer's parking lot with a bullet wound in his abdomen that caused his immediate death.

On September 6, 1988, Claimant filed a Fatal Claim Petition, alleging that her husband had died as a result of a work-related incident and claiming compensation as the dependent widow. On September 27, 1988, the Employer and its insurance carrier filed an Answer to Claimant's Petition, denying Claimant's allegation. After a hearing was held, the Referee determined that Claimant was the legal widow of the deceased and had been living with and dependent upon him at the time of his death, but denied fatal claim benefits finding that decedent's death was not related to his employment. Specifically, the Referee found that decedent's death was not caused by a condition of the Employer's premises, and there was no evidence to establish that the decedent was engaged in any activities furthering the interests of his Employer when he was shot in the

Employer's parking lot. To the contrary, the Referee found that decedent was shot and killed by the intentional act of an unknown person who acted out of personal motivation directed solely at the decedent.

On appeal, the Board found that the Referee's findings were not supported by substantial evidence because the Chief of Police testified that no motive had been established for the killing and no one was under suspicion. The Board further found that Claimant had met her burden of proving that decedent's death occurred within the scope of his employment or while furthering the interests of his Employer, because his death occurred on the Employer's premises at a reasonable time after his work shift had ended. Accordingly, the Board reversed the Referee and awarded Claimant fatal claim benefits. The Employer then filed the present appeal from that award of benefits.

The sole issue before us is whether the Board erred in determining that decedent had been in the scope of his employment at the time of his death, thus entitling his wife to fatal claim benefits.

Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1), provides in pertinent part the following:

> The term "injury" shall be construed to mean an injury to an employe arising in the course of his employment and related thereto. The term "injury arising in the course of his employment".... shall include all other injuries sustained *while the employe is actually engaged in the furtherance of the business or affairs of the employer,* whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the

employe's presence thereon being required by the nature of his employment. (Emphasis added.)

The Employer first contends that the Board erred in determining that decedent was in the scope of his employment at the time of his death because decedent was not actually furthering its business when he was shot. Specifically, the Employer argues that decedent had changed from his work clothes into street clothes, had punched out on the time clock, was not carrying any company property, and was not on his way to one of the Employer's other facilities when he was killed in the Employer's parking lot.

The Employer cites *Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation,* 31 Pa.Commonwealth Ct. 329, 376 A.2d 271 (1977), for the proposition that employees who are injured or killed while in their employer's parking lot are generally not engaged in furthering their employer's interest and will be denied benefits. In *Slaugenhaupt,* an employee suffered a seizure while driving his car in his employer's parking lot before he was scheduled to commence work. The car went out of control and came to rest against a concrete abutment on the employer's property. After sustaining severe head and neck injuries, the employee died. In discussing whether decedent's wife was entitled to fatal claim benefits, this court reiterated the old adage that Section 301(c)(1) of the Act requires that injuries arise in the course of employment and be related *thereto in order to be compensable.* We further stated that injuries may be sustained in the course of employment in two distinct situations:

(1) where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs, *or* (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises;

and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Slaugenhaupt,* 31 Pa.Commonwealth Ct. at 333, 376 A.2d at 273.

■ ··While the Employer argues that *Slaugenhaupt* holds that the Board is required to utilize the second test when determining if a parking lot injury is compensable, this court in *Slaugenhaupt* never made such a requirement, and ultimately awarded the deceased's wife fatal claim benefits on the basis that the employer conceded that Mr. Slaugenhaupt *was in the course of his employment when he entered its parking lot* which he was required to use within a reasonable time before work. Additionally, because the parties stipulated that Slaugenhaupt's death was the result of the injuries he suffered in his automobile and not his epilepsy, we found that his death was also *related to* his employment.[1] Consequently, the Employer's argument lacks merit.

■ Further, the Board relied upon the rational espoused in *Newhouse v. Workmen's Compensation Appeal Board (Harris Cleaning Service),* 109 Pa.Commonwealth Ct. 96, 530 A.2d 545 (1987), *petition for allowance of*

---

[1] The only reason that the "condition of the premises" issue was discussed in *Slaugenhaupt* was because the employer raised the argument that an employee injured on the employer's premises must prove that his injury was the result of faulty arrangements or management of the employer's premises or due to the negligent conduct of the employer's business or affairs thereon. Although we addressed that issue and determined that Section 301(c)(1) of the Act does not require that an injury be the result of a faulty condition or due to negligent operation of the employer's premises, that discussion had no bearing on the outcome of the case.

We also note that the "condition of the premises" clause in Section 301(c)(1) of the Act appears to insure that an employer is only liable for paying out workmen's compensation benefits when an employee is injured on its premises, whether or not engaged in the performance of his duties. Otherwise, an employer would be liable for tort claims and damages in actions brought by employees who claimed they were not engaged in the performance of their duties at the time they were injured, but that their injuries were the result of the condition of the employer's premises.

*appeal denied,* 517 Pa. 627, 538 A.2d 879 (1988). In *Newhouse,* we held that "even though not actually engaged in the employer's work, an employee will be considered to have suffered an injury in the course of employment if the injury occurred on the employer's premises at a reasonable time before or after the work period." *Newhouse,* 109 Pa.Commonwealth Ct. at 100, 530 A.2d at 547. This holding inherently implies that once an employee is on the Employer's premises, actually getting to or leaving the employee's work station is a necessary part of that employee's employment, and thus, definitively furthering the employer's interests. There is no question that an Employer's "premises" includes a reasonable means of access to the situs of the Employer's business, including employee parking lots. *Schofield v. Workmen's Compensation Appeal Board (Ohio Rubber Company),* 39 Pa.Commonwealth Ct. 282, 395 A.2d 328 (1978).

Because the parties in this case agreed that decedent was killed in the Employer's parking lot only minutes after he left work, decedent was definitively on the Employer's premises at the time of his death, and was there a reasonable time after his work period had ended.[2] Consequently, we find that the Board did not err in determining that decedent was furthering his Employer's interests at the time of his death.[3]

The Employer also argues that decedent's wife should be denied fatal claim benefits because decedent was killed by the intentional act of an unknown third person, and pursuant to Section 301(c)(1) of the Act, benefits cannot

---

**2.** Because decedent was in a supervisory position, we may presume that he was always in the scope of his employment while on the Employer's premises, regardless of whether he punched in and out on a time clock. Additionally, because decedent was shot shortly after he punched out on the time clock, we need not address whether he was on the Employer's premises a reasonable amount of time after his shift had ended.

**3.** Because we have determined that decedent was in the scope of his employment at the time he was shot, we need not address the Employer's argument that the decedent was not fatally injured as a result of the condition of its premises.

be paid to those injured by the intentional acts of a third person for personal reasons unrelated to the employee's employment.[4] In order to establish the defense of an intentional act, the Employer bears the burden of proving that the act resulted from personal animosity directed against the employee unrelated to his employment. *D'Agata National, Inc. v. Workmen's Compensation Appeal Board (D'Agata)*, 84 Pa.Commonwealth Ct. 527, 479 A.2d 98 (1984).

 In support of this argument, the Employer points out that the Referee made the following finding of fact:

8. Your Referee finds as a fact that from the location of the bullet wound, the decedent was shot and killed by the intentional act of an unknown person or persons who acted out of personal motivation directed solely to the decedent.

However, the Employer fails to point out that the Referee also made a totally contrary finding of fact:

5. (e) There was not any evidence of any motive or reason for killing the decedent.

Because the Referee's findings of fact must be supported by substantial evidence, *Lehigh Valley Coal Sales Company v. Workmen's Compensation Appeal Board*, 66 Pa.Commonwealth Ct. 59, 443 A.2d 1339 (1982), the fact that the Referee also found that there was not any evidence of a motive for killing the decedent indicates that there was not substantial evidence to support its finding that decedent was killed by the intentional act of a third person for personal reasons directed at the decedent.

 Additionally, even though the Employer argues that decedent was well liked by all of his co-workers, and no connection between the shooting and decedent's employment was ever found, as the Board pointed out in its

---

4. Section 301(c)(1) of the Act provides in pertinent part that the term "injury arising in the course of his employment," shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment.

opinion, the Chief of Police of Ridgway whose department investigated decedent's death testified that no motive had been established for the shooting, robbery had been ruled out as a possible motive because decedent's wallet was not missing, and no one was under suspicion for his death. In view of the Referee's conflicting findings of fact, as well as the absence of any evidence in the record that decedent's murder was the result of personal animosity, we agree with the Board that there was not substantial evidence to support the Referee's finding that decedent's death was caused by the intentional act of a third person acting out of personal motivation directed at the decedent.

Accordingly, the decision of the Board is affirmed.

SILVESTRI, Senior Judge, concurs in the result only.

## ORDER

AND NOW, this 5th day of February, 1992, the order of the Workmen's Compensation Appeal Board, dated January 31, 1991, No. A–90–65, is affirmed.